| Name of Plaintiff | Name of Composition | Number of Parts Manufactured |
| --- | --- | --- |
| Paramount Music Corp. | I'm Just a Lucky So and So | 899 |
| Patricia Music Publishing Corp. | Mediolistic | 2805 |
| Pickwick Music Corp. | Lover Man | 2810 |
| | Squeeze Me | 899 |
| Regent Music Corp. | Soft Winds | 3502 |
| Robbins Music Corp. | By the River Saint Marie | 2792 |
| | Chloe | 2836 |
| | Invitation | 3502 |
| | Just A-sittin' and A-rockin' | 899 |
| | Just Friends | 2696 |
| Shapiro, Bernstein & Co. | Cherokee | 2696 |
| | Mississippi Mud | 2800 |
| Sherwin Music, Inc. | My One and Only Love | 5196 |
| Sinatra Songs, Inc. | Time after Time | 899 |
| Soundpost, Inc. | Herbie's Buddy | 3200 |
| | Theme from Theme from | 3200 |
| Tempo Music, Inc. | Flamingo | 2805 |
| | Perdido | 6701 |
| Williamson Music, Inc. | It Might as Well Be Spring | 1616 |

**UNION LEADER CORPORATION**

v.

**NEWSPAPERS OF NEW ENGLAND, INC., et al.**

**Civ. A. No. 59–23.**

United States District Court
D. Massachusetts.

Aug. 30, 1960.

Lispenard B. Phister, Robert S. Judge, Arthur H. Bloomberg, Boston, Mass., for plaintiff.

Frank Goldman, Robert H. Goldman, Lowell, Mass., Joseph Bacigalupo, Lawrence, Mass., for defendant the Haverhill Gazette.

**WYZANSKI, District Judge.**

This case comes before the Court pursuant to Haverhill Gazette's motion filed in open court Friday, August 26, 1960. The motion is for an order and rule to show cause why Union is not in contempt of this Court's partial final decree of December 28, 1959, 180 F.Supp. 125, as amended January 4, 1960.

The motion draws attention to the following provisions of paragraphs 3 and 9 of that amended decree:

"3. Union Leader Corporation shall not make or collect any charge for advertising in The Haverhill Journal except in strict conformity with a publicly announced rate schedule. The corporation shall be free to vary the schedule from time to time. But to be effective an advertising schedule shall set forth *every* aspect of the rates, including, for example, the classification of types of advertising and of advertisers, the basic charges, discounts for volume, discounts for prompt payment, discounts for repetitions of an advertisement, and all types of special benefit available. For the purposes of this paragraph a rate schedule shall be regarded as publicly announced when, alternatively, it is published in The Haverhill Journal, *or* it is posted in a conspicuous place in the offices of The Haverhill Journal and is available upon demand by any person who indicates the possibility that he will advertise in or compete with The Haverhill Journal." * * *

"9. Union Leader Corporation shall refrain from attempting in any way to monopolize the market in Haverhill for daily local newspapers of high quality."

On Monday, August 29, 1960, due notice having been given to Union, this Court heard the testimony offered by the Gazette and by Union. Oral evidence was given by Lawlor, president of the Gazette, and by Loeb, president of Union. The Court received, among other exhibits, Ex. 1, Union's rate card No. 18, issued August 15, 1960, and Ex. 2, the August 27, 1960 issue of the Journal carrying a publication of the aforesaid Ex. 1. A portion of Ex. 1, known as paragraph 1(e) reads as follows:

"(e) All General R.O.P. Display Advertising scheduled for daily insertion will appear without additional charge in Haverhill (Mass.) Journal, unless request made to the contrary. (Does not apply to spot color.)"

The testimony convincingly shows that Loeb had general discussions with Cymrot, his associate, about the desirability of Union adopting or continuing a policy under which it offered to national advertisers at a combined rate display advertising in both the Manchester Union Leader and the Haverhill Journal. Loeb gave Cymrot authority to act. Cymrot directed the preparation of Ex. 1, and caused copies of it to be mailed to several hundred potential national advertisers or their representatives.

Before Saturday, August 27, no one caused Ex. 1 either to be published in the Journal or posted in the Journal's offices. It does not appear that the Journal as yet has billed for or collected any

charges based on paragraph 1(e) of Ex. 1. Saturday, August 27, the day after the petition was filed in this Court, the Journal published Ex. 1 as part of Ex. 2.

Upon the basis of the foregoing testimony, this Court is not prepared to find that the Journal had actually stepped across the barrier laid down by paragraph 3 of the amended decree. Up to now it did not "make or collect" any charge under paragraph 1(e) of Ex. 1. Perhaps it would have done so had it not been caught on the verge of action. But readiness to be contemptuous is only contemptible not contemptuous.

Moreover, it is at least arguable that Union in giving widespread notice to hundreds of potential national advertisers was affording publicity comparable to that required by the decree, consonant with the decree's underlying policy, and calculated to accomplish the purpose of paragraph 3 of the decree.

It is a more difficult question to decide whether Union has violated paragraph 9 of the decree. There are, it seems to me, compelling reasons for this Court to avoid a final ruling on this issue at this stage.

█ First, it now appears that Union for a long time, beginning much earlier than the date of the original trial in this case, or the decree now said to have been violated, has offered and collected a combination rate for advertising in the Union Leader and in the Journal. Perhaps such a combination rate under the circumstances of the competitive market and other factors in Haverhill does constitute a contract in restraint of trade or an attempt to monopolize. But, strangely enough, NNE did not bring out this point in the trial so far held. If NNE chooses to rely on this matter to secure civil relief of the type prayed in the present petition, it could have raised the point at the earlier stages of the plenary trial, and it may tender the same point by appropriate amendment of the pleading and appropriate evidence at later stages of the plenary trial when the civil case is returned to this Court after it has taken its course through the appellate courts. To be sure, some time may elapse. But, though this Court acted with great dispatch, the parties themselves and only the parties are to blame for the delay which has followed this Court's decree.

Second, if the Gazette wishes to suggest that Union and its president Loeb are in criminal contempt, the Gazette has so far failed to ask for criminal proceedings. Furthermore, if such proceedings were to be initiated this Court would have to consider the relevance of 18 U.S. C. § 3691. Presumably if Union or Gazette is charged with having entered into contracts in restraint of trade or attempts to monopolize "the act or thing done * * * also constitutes a criminal offense under" an "Act of Congress" and, "upon demand therefor, shall be entitled to trial by jury".

Motion denied.